STATE OF NORTH CAROLINA
v.
MACK EUGENE POLK, JR.
No. COA08-999.
Court of Appeals of North Carolina.
Filed May 19, 2009.
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General Dorothy Powers, for the State.
Jarvis John Edgerton, IV, for defendant-appellant.
ROBERT C. HUNTER, Judge.
On 31 July 2006, defendant Mack Eugene Polk, Jr. was indicted for assault on a female, communicating threats, second degree forcible rape, three counts of crime against nature, and three counts of second degree sexual offense. On 21 August 2006, defendant was indicted for being a habitual felon. The case was tried at the 4 February 2008 Criminal Session of Union County Superior Court.
On 3 June 2006, defendant and the victim, who was the defendant's fiancée, were living together in Matthews, North Carolina. The victim and the defendant were drinking alcohol and using cocaine together. Eventually, defendant asked her to have sex. The victim testified that she did not want to have sex with defendant, so she ignored him. She explained that she ignored defendant because, in the past, he had gotten "violent" and she did not want to make him "mad." The victim testified that she was "trying to keep things as calm as I could." The victim testified that after she ignored him, the defendant "ranted and raved and cussed me . . . for the next two hours and I just sat there and listened to it."
Sometime past midnight, the victim told defendant she was going to bed. She went to the bedroom, turned off the light and got into bed. In response, defendant went into the bedroom after her, "flipped the lights on and he said somebody's mouth is going to get wet tonight and it might as well be yours." At the time, the victim was sitting "cross-legged" in the bed. The defendant walked over to her, unzipped his pants, and looked down at his penis. The victim started to cry. Defendant told the victim that he would give her "something to cry about," grabbed her by the back of her head and her hair and pushed her head towards his groin. The victim then began performing oral sex on the defendant while crying at the same time. After a short time, defendant grabbed the victim by the wrist, pulled her into the living room, and sat down on the couch. Once in the living room, defendant indicated to the victim that she should finish performing oral sex on him. Defendant asked the victim if he could use a "Smirnoff Ice bottle" on her, but she refused because it would "hurt." Afterward, defendant and the victim engaged in vaginal and anal intercourse. The victim testified that she had not said no at any point prior to defendant's request regarding the bottle because she was afraid defendant would hit her. The victim testified that defendant had hit her previously, including punching her in the face on two occasions and beating her with a dog leash on a third occasion.
The next day, the victim spoke with a friend on the phone and told him that she had been assaulted "worse than ever before[.]" The friend called the police. Sergeant Chase Coble of the Union County Sheriff's Office arrived at defendant and the victim's home. The victim told Sergeant Coble that defendant had forced her to perform oral sex on him. The victim also told Sergeant Coble that she was "scared" of defendant because he had hit her in the past. After his arrest, defendant gave a signed statement to police. Defendant stated that he and the victim had argued, and that they had consensual sex, including oral, vaginal and anal sex, on the couch in the living room. Defendant denied threatening the victim or forcing her to have sex with him.
Defendant was convicted of one counts each of assault on a female, communicating threats, crime against nature, and being a habitual felon. The trial court sentenced defendant to 150 days imprisonment for the charge of assault on a female; a consecutive term of 120 days for the charge of communicating threats; and a consecutive term of 100 to 129 months imprisonment for crime against nature and being a habitual felon. Defendant appeals. After careful review, we find no error. Defendant's sole argument on appeal is that the trial court committed plain error by failing to instruct the jury on the essential element of penetration for the offense of crime against nature. Defendant contends that the instructional error had a probable impact on defendant's guilt because there was no evidence presented that actual penetration occurred. Defendant claims that although the victim testified that she performed oral sex on him, there was no detailed evidence that actual penetration occurred. We are not persuaded.
"A plain error is one `so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.'" State v. Carroll, 356 N.C. 526, 539, 573 S.E.2d 899, 908 (2002) (quoting State v. Bagley, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), cert. denied, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)), cert. denied, 539 U.S. 949, 156 L. Ed. 2d 640 (2003). It is to be applied cautiously and only in the exceptional case where the error is so prejudicial, that justice cannot have been done. State v. Baldwin, 161 N.C. App. 382, 388, 588 S.E.2d 497, 503 (2003) (citing State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). "In deciding whether a defect in the jury instruction constitutes `plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." State v. Odom, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983)(citation omitted). "The crime against nature, G.S. §14-177, is sexual intercourse contrary to the order of nature. Proof of penetration of or by the sexual organ is essential to conviction." State v. Copeland, 11 N.C. App. 516, 519, 181 S.E.2d 722, 724 (citations omitted), cert. denied, 279 N.C. 512, 183 S.E.2d 688 (1971); see also State v. Whittemore, 255 N.C. 583, 585, 122 S.E.2d 396, 398 (1961)("The crime against nature involving mankind is not complete without some penetration, however slight, of a natural orifice of the body. The penetration need not be to any particular distance.")(citations omitted). Thus, as argued by defendant, the trial court should have instructed the jury on the essential element of penetration. Nevertheless, in this case, we conclude that the trial court's failure to instruct the jury on penetration did not constitute plain error.
"The term `oral sex' is recognized as describing a sexual act involving `contact between the mouth of one party and the sex organs of another.'" State v. Goodson, 313 N.C. 318, 319, 327 S.E.2d 868, 869 (1985)(quoting People v. Dimitris, 115 Mich. App. 228, 234, 320 N.W.2d 226, 228 (1981) (per curiam)). Here, the victim testified that she performed oral sex on the defendant, and the defendant admitted to police in a signed statement that he and the victim engaged in oral sex. The only material difference between the victim's testimony and the defendant's signed statement was whether the oral sex was forced or consensual. Thus, because the evidence is overwhelming that penetration occurred, we conclude that the trial court's failure to instruct the jury on the essential element of penetration had no probable impact on the jury's finding of guilt. Accordingly, we hold that the trial court did not commit plain error.
No error.
Judges STEELMAN and JACKSON concur.
Report per Rule 30(e).